**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CLARENCE HOPKINS,<br><br>     **Plaintiff,**<br><br>v.<br><br>DR. GORDON, NURSE KELLY BATEMAN, NURSE ERIN DAVIS, CORRECTIONAL OFFICER MADDOX, and CORRECTIONAL OFFICER PERSINGER,<br><br>     **Defendants.** | **Case No. 26-cv-423-RJD** |

## <u>MEMORANDUM AND ORDER</u>

**DALY, Magistrate Judge:**

Plaintiff Clarence Hopkins, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Hopkins alleges that Defendants were deliberately indifferent to his chronic back pain and injuries he received in a fall from his bunk.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections and the medical providers, to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court and these entities.

portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

Hopkins alleges that he has a history of chronic back pain dating back to 2022 (Doc. 1, p. 7). On April 16, 2025, he arrived at Pinckneyville and informed a nurse at intake about his chronic back pain. She scheduled him to see medical director Dr. Gordon (*Id.*). In May 2025, Hopkins met with Dr. Gordon and explained his issues with his lower back and its impact on his ability to perform daily activities (*Id.*). He further explained that prior to his transfer, doctors at Hill Correctional Center had treated him with naproxen and Tylenol for three years but the medications did not help his pain. On April 15, 2025, he was finally scheduled for a cortisol injection but was transferred prior to receiving the injection (*Id.*). But Dr. Gordon denied his request for the injection and decided to continue with the naproxen and Tylenol prescriptions because he was not familiar with Hopkins's history (*Id.*).

At the appointment, Hopkins also requested a low bunk, low gallery permit because Pinckneyville's cells lacked ladders to reach the top bunk and he lacked the strength to get into the top bunk (Doc. 1, p. 8). Dr. Gordon stated that the request was "insincere," and he denied the requested permits (*Id.*). He scheduled Hopkins for a follow-up in four months (*Id.*).

Hopkins notes that in addition to his back pain, he was exposed to hazardous smoke in his cellhouse due to the widespread use of illegal and illicit smoking of fentanyl,

synthetic marijuana, and wasp/roach spray (Doc. 1, p. 8). Hopkins's cellmate was addicted to smoking these drugs and exposed Hopkins to the effects of second-hand smoke (*Id.*). Specifically, Hopkins suffered from headaches, vomiting, and stomachaches (*Id.*). On May 14, 2025, he was sitting on his top bunk while his cellmate smoked, causing Hopkins to get high off the fumes (*Id.*). He informed Correctional Officers Maddox and Persinger that he was suffering from the effects of the drugs and asked for medical care, but they refused his requests for care (*Id.*). Sometime that day, Hopkins passed out from the smoke and fell from the top bunk, injuring himself (*Id.*).

During the morning rounds for medications, Hopkins spoke to Nurse Kelly Bateman (Doc. 1, p. 9). He informed her that he had fallen from his bunk after experiencing dizziness from the secondhand smoke and landed on the toilet (*Id.*). He noted that he hit his neck and could barely stand (*Id.*). Despite allegedly being severely injured, Nurse Bateman told him to submit a sick call request form; she denied him any further care (*Id.*). Hopkins next spoke to Nurse Erin Davis informing her that he suffered significant injuries in the fall (*Id.*). She also denied his request for care, telling him to submit a sick call request (*Id.*). Despite submitting numerous requests, it was two months before he finally saw Dr. Gordon (*Id.*). By that time, his injured leg, neck, swollen jaw, and other swelling had healed (*Id.*). Hopkins requested an MRI, but Dr. Gordon denied the request and ordered an x-ray (*Id.*). Hopkins notes that the x-ray revealed severe arthritis (*Id.*).

**Discussion**

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** Eighth Amendment deliberate indifference to medical needs claim against Dr. Gordon for continuing with an ineffective course of treatment for Hopkins's chronic back pain.

**Count 2:** Eighth Amendment deliberate indifference to medical needs claim against Officers Maddox and Persinger for failing to provide Hopkins with medical care after his exposure to second-hand smoke from illicit drugs.

**Count 3:** Eighth Amendment deliberate indifference to medical needs claim against Nurse Kelly Bateman and Nurse Erin Davis for failing to provide Hopkins with medical care after falling from his bunk.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

**Count 1**

At this stage, Hopkins states a viable claim for deliberate indifference against Dr. Gordon for his treatment of Hopkins's chronic back pain. Hopkins alleges that Dr.

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Gordon continued with an ineffective course of treatment despite Hopkins informing him that the medications were not working and he had previously been scheduled for a cortisol shot. *Berry v. Peterman*, 604 F.3d 435, 441-42 (7th Cir. 2010) (knowingly continuing with an easier treatment that is known to be ineffective can amount to deliberate indifference); *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005). Thus, Count 1 shall proceed against Dr. Gordon as to his treatment for Hopkins's chronic back pain.

Hopkins also notes that it took two months to see Dr. Gordon for the injuries he sustained from his fall, but there are no allegations to suggest that Dr. Gordon delayed treatment or acted with deliberate indifference. Nor is there any indication Dr. Gordon was aware of Hopkins's need for care prior to his appointment. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). He merely alleges that his injuries were healed by the time that he saw Dr. Gordon. Hopkins also seems to take issue with the denial of his request for an MRI, but Hopkins does not get to choose his course of treatment. *Greeno*, 414 F.3d at 653 (mere disagreement with course of treatment does not amount to deliberate indifference); *Snipes v. DeTella*, 95 F.3d 586, 591-92 (7th Cir. 1996). Further, Dr. Gordon ordered an x-ray which Hopkins acknowledged showed arthritis. There are simply no allegations to suggest that Dr. Gordon was deliberately indifferent in the treatment of Hopkins's fall.

**Counts 2 and 3**

Counts 2 and 3 involve Hopkins's exposure to second-hand smoke and the injuries he sustained as a result of a fall caused by that exposure. Hopkins's claims involve correctional officers and nurses from whom he requested care both prior to and after his

5

fall. The claims do not involve Dr. Gordon or Hopkins's chronic back pain. They are separate and distinct from the allegations in Count 1. As such, these allegations are unrelated to the claim in Count 1 and are subject to severance. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

### Disposition

For the reasons stated above, Counts 2 and 3 against Officer Maddox, Officer Persigner, Kelly Bateman, and Erin Davis are **SEVERED** into a new case. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;

- The Complaint (Doc 1); and

- Hopkins's motion for leave to proceed *in forma pauperis* (Doc. 2).

The remaining claim in Count 1 against Dr. Gordon for the treatment of Hopkins's chronic back pain shall proceed in this case.

The Clerk of Court shall prepare for Dr. Gordon: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendant's place of employment as identified by Hopkins. If defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

6

If defendant can no longer be found at the work address provided by Hopkins, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendant need only respond to the issues stated in this Merit Review Order**.

Because Hopkins's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Hopkins, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Hopkins is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 12, 2026**

REONA J. DALY
**United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendant of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendant will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendant's Answer, but it is entirely possible that it will take **90 days** or more. When defendant has filed an Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions, to give the defendant notice and an opportunity to respond to those motions. Motions filed before defendant's counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**

8